OPINION
Defendant-appellant Leander Crock appeals his conviction of unauthorized practice of medicine which was entered after a jury trial in the Noble County Court. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF FACTS
Appellant ran a "Therapeutic Clinic" and a non-profit corporation called Noble County University in Caldwell, Ohio. At the clinic, appellant performed "aura therapy" where he attempted to heal a sick person's aura with a device that generates a minimal electromagnetic field. He accepted donations for these treatments. He also sold the devices for $3,000 each. The "university" owned the patent that was pending for the device. This "university" occupied a room in a nursing home run by appellant. The "university" issued certificates purporting to be educational degrees. For instance, one certificate which hung in the clinic stated that appellant had received his "doctor's degree in therapeutic medicine."
The "university" also printed booklets for the clinic entitled "Doctor Book For the Aura." (Since the criminal charge, the booklets have been changed). The inside front cover stated, "If your Doctor can't Kill Cut or Burn Your problem Lee Crock's method of Aura therapy Will Heal it. For the healing of Cancer, Alzheimer's, Parkinson's Disease, Muscular Dystrophy, Arthritis and Rheumatism." Specifically, the booklet recommended eighteen hours of treatment to dissolve cancer. The back cover of the booklet stated that the clinic specializes in these diseases and others and declared, "All responded to treatment by the machine and were healed of the ailments. From Sept. 01, 1997 to Sept. 01, 1998." Similar statements were made on large signs which were posted in the clinic.
After investigation by Randy Beck of the State Medical Board of Ohio, a complaint was issued in November 1998, charging appellant with the unauthorized practice of medicine, a first degree misdemeanor. The case proceeded to trial, and on August 13, 1999, the jury found appellant guilty as charged. Appellant was thereafter sentenced to two years of probation subject to contempt citations. He was fined $1,000 and ordered to pay costs. Appellant filed timely notice of appeal, and the case was fully briefed as of March 29, 2000.
 ARGUMENT OVERVIEW
Appellant sets forth three assignments of error which will be discussed individually infra. Generally, the assignments allege that irrelevant evidence was admitted. In the alternative, these assignments contend that even if the contested evidence is relevant, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury and thus should have been excluded under Evid.R. 403 (A). The state counters that the contested evidence is relevant and probative of the elements of the offense. We note that even if the evidence is irrelevant, the case shall not be reversed for a new trial absent unfair prejudice which resulted in a verdict that otherwise would not have occurred. State v. Allard (1996), 75 Ohio St.3d 482, 499.
 THE OFFENSE
Pursuant to R.C. 4731.41, no person shall practice medicine or claim to so practice without the appropriate certificate from the state medical board. A person is considered to be practicing medicine if that person falls under any of three categories. R.C.4731.34. First, a person practices medicine by using the words, "Dr.," "Doctor," or any other title in connection with that person's name that in any way represents that the person is engaged in the practice of medicine. Secondly, one practices medicine by examining or diagnosing for compensation of any kind. Thirdly, one practices medicine by prescribing, advising, recommending, administering or dispensing, for compensation of any kind, directly or indirectly, a drug, medicine, appliance, mold, cast, application, operation or treatment for the cure or relief of a disease or infirmity.
From reviewing the exhibits and the testimony, it is clear that appellant committed the charged offense. For instance, under the first option, appellant printed a certificate which stated that he had a doctor's degree in therapeutic medicine. Combined with the word "doctor," "degree in therapeutic medicine" is a sufficient representation to the public that appellant is engaged in the practice of medicine. Furthermore, under the third option, appellant advised, recommended and administered an appliance, his device, to cure the listed diseases. He received donations for treatments at the clinic and charged $3,000 per device sold. He testified that one of his agents sold 300 machines. The money was paid to the "university," but financial documents revealed that money from the "university" account went toward appellant's personal federal and state income taxes. Appellant does not contest the sufficiency of the evidence but instead argues that the jury heard irrelevant and prejudicial evidence which tainted his case. The specific allegations are contained in appellant's three assignments of errors.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error argues:
 "THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF IRRELEVANT EVIDENCE REGARDING THE STATUS OF A NON-PROFIT CORPORATION KNOWN AS NOBLE COUNTY UNIVERSITY, OPERATED BY THE DEFENDANT"
Appellant objected at trial and in a motion in limine to the presentation of evidence regarding the status of the "university." After hearing arguments in a side bar conference, the court overruled appellant's objections. Appellant now states that the court erred in allowing information on the existence of the "university" to be introduced because neither the "university" nor appellant was charged with deceptive business practices.
However, the information presented on the status of the "university" was not irrelevant or prejudicial. The booklets implied that the clinic was a branch of the "university," calling it "Noble County University Therapeutic Clinic." The certificate in which appellant held himself out to have a "doctor's degree in therapeutic medicine" was printed at, and issued by, the "university." This certificate was displayed prominently in the "clinic." Additionally, the status and certain financial records of the "university" were relevant to assist in proving an element of the third type of practicing medicine. For instance, appellant sold the aura therapy machines for $3,000. Since the "university" had applied for the patent, the money was placed in a "university" account. As aforementioned, the financial records. of the "university" were reviewed to demonstrate how appellant used money from the "university" checking account to pay personal bills such as federal and state income taxes. This evidence is proof of the indirect compensation element. Hence, the trial court did not err in admitting the aforementioned evidence regarding the "university." This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN PERMITTING EXPERT TESTIMONY CONCERNING THE CONSTRUCTION AND EFFECTS OF THE DEFENDANT'S MACHINE."
Brian Baertlein testified via a video-taped deposition. Mr. Baertlein has a PhD. in electrical engineering and is a research scientist at Ohio State University. Appellant's motion in limine and objections at trial argued that testimony about appellant's aura machine is irrelevant since appellant is not charged with fraud or deceptive trade practices. He states that whether the machine works is not a factual issue. Appellant points out that even if the machine was 100% effective, this would not provide him with a defense to the offense of unauthorized practice of medicine. Hence, he alleges that the deposition was irrelevant and even if relevant, it was only utilized to inflame the jury into believing that he was defrauding patients.
The state argues that Dr. Baertlein's testimony was relevant to the element of the offense that prohibits using an appliance on another. The state argues that the expert opinion on the aura machine is admissible under Evid.R. 702 because it assists the trier of fact in understanding the evidence or determining a fact in issue.
Since administering an appliance is an element of the offense, it was not an abuse of discretion for the court to allow expert testimony of an electrical engineer to describe the actual functioning of the device used and sold by appellant. Although the deposition was overly long and contained irrelevancies, it does not contain evidence that unfairly prejudiced appellant's defense given the clear and uncontested evidence against him explained supra. See Allard, 75 Ohio St.3d at 499. Thus, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error provides:
 "THE TRIAL COURT ERRED IN PERMITTING THE PRESENTATION OF EVIDENCE REGARDING THE DEATHS OF CLIENTS OF THE DEFENDANT."
The booklets circulated by appellant had the names of clients whom he claimed to have cured of cancer. When Mr. Beck investigated these clients, he found that some of these clients had died in 1998. In his motion in limine and in his objections at trial, appellant sought exclusion of any evidence of the death of these clients since he was not charged with causing their deaths or fraud in advertising. The court agreed with appellant and found the evidence inadmissible. (Tr. 114). The court warned defense counsel that if he opens the door in cross-examination, then the state will not be precluded from questioning on the deaths in rebuttal. Defense counsel indicated that he understood. (Tr. 115).
On cross-examination, defense counsel asked Mr. Beck twice if he interviewed any of appellant's clients during the lengthy investigation. (Tr. 150-151). At another side bar, defense counsel indicated that he was not opening the door because Mr. Beck saw various clients at the clinic when he was investigating appellant, and thus, he could have interviewed these clients. (Tr. 151). The court warned defense counsel to beware of opening the door. Nonetheless, defense counsel proceeded to ask:
 "Q. Did you attempt to contact any of Mr. Crock's patients?
 A. Well, my investigation mainly focused on 8 patients.
Q. Where did you find those patients at?
 A. They were in the book, in the doctor book, and then in one of the files that was seized from the Therapeutic Center.
Q. Okay, did you get to speak to any of them?
 A. No, I did they are all —. They are not available." (Tr. 156).
When cross-examining appellant, the state began asking about a client who died. Defense counsel objected, and the court overruled the objection. The state then asked:
 "Q. Once again, Mr. Crock, calling your attention to page 10 this Andrew Braglin. You had indicated earlier that a number of people had come back to you and testified that he had been cured of their cancer. Is this one of them?
A. Yes.
 Q. Okay, and were you aware that he had died later on?
* * *
 A. Yes. But he didn't die of cancer they tell me.
Q. Do you know what he died of?
 A. Hemorrhage of the lungs. He had cancer of the liver." (Tr. 288).
On further questioning, appellant stated:
 "Q. A man that looked like him and got as much better as he did and lived as long as he did when they guaranteed him he was going to be dead before Christmas and lived until March I did something right, or somebody did. The Lord was kind to him.
* * *
 Q. But his testimonial in here is that he was cured?
 A. That's what he told me. They could not find that he had cancer and he asked the doctor up at Ohio State what the hell did you charge me 50 thousand dollars for and the doctor left." (Tr. 289-290).
From the above testimony, it appears that defense counsel opened the door to the questioning of appellant to reveal why Mr. Beck could not interview certain clients who appellant claims to have cured. Defense counsel implied that Mr. Beck's investigation was not thorough, and the state opted to dispute this. Moreover, after reviewing the testimony, it is apparent that the client whose death came out at trial actually lived longer than medical doctors predicted. As such, the revelation that this client died is not as prejudicial as appellant contends. See Allard,75 Ohio St.3d at 499. Therefore, this assignment of error is overruled.
Lastly, appellant argues that even if the individual errors were not prejudicial, the cumulative effect requires a new trial. However, due to the amount and type of evidence which constitutes the elements of the offense, the unredacted video deposition and the revelation that a client died months after his medical doctor said he would do not create a cumulative error scenario.
For the foregoing reasons, the judgment of the trial court is affirmed.
Cox, P.J., concurs, Donofrio, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE